# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JANARD BROWN, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civil Action No. 17-727-LPS |
| | : | |
| CLAIRE DEMATTEIS, Commissioner, | : | |
| Delaware Department of Corrections, | : | |
| ROBERT MAY, Warden, | : | |
| and ATTORNEY GENERAL OF THE | : | |
| STATE OF DELAWARE, | : | |
| | : | |
| Respondents.[1] | : | |

| | | |
|---|---|---|
| JOHN CHAVOUS | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civil Action No. 17-831-LPS |
| | : | |
| CLAIRE DEMATTEIS, Commissioner, | : | |
| Delaware Department of Corrections, | : | |
| KOLAWOLE AKINBAYO, Warden, and | : | |
| ATTORNEY GENERAL OF THE | : | |
| STATE OF DELAWARE, | : | |
| | : | |
| Respondents.[2] | : | |

---

[1] Warden Robert May replaced former Warden Dana Metzger, an original party to the case. *See* Fed. R. Civ. P. 25(d).

[2] Warden Kolawole Akinbayo replaced former Warden Steven Wesley, an original party to the case. *See* Fed. R. Civ. P. 25(d).

SAYYID PEREZ,                                  :
                                               :
      Petitioner,                          :
                                               :
      v.                                   :        Civil Action No. 17-832-LPS
                                               :
CLAIRE DEMATTEIS, Commissioner,                :
Delaware Department of Corrections,            :
KOLAWOLE AKINBAYO, Warden, and                 :
ATTORNEY GENERAL OF THE                        :
STATE OF DELAWARE,                             :
                                               :
      Respondents.                         :

---

DESHAWN CHASE,                                 :
                                               :
      Petitioner,                          :
                                               :
      v.                                   :        Civil Action No. 17-833-LPS
                                               :
CLAIRE DEMATTEIS, Commissioner,                :
Delaware Department of Corrections,            :
KOLAWOLE AKINBAYO, Warden,                     :
and ATTORNEY GENERAL OF THE                    :
STATE OF DELAWARE,                             :
                                               :
      Respondents.                         :

---

PHIL JONES,                                    :
                                               :
      Petitioner,                          :
                                               :
      v.                                   :        Civil Action No. 17-835-LPS
                                               :
CLAIRE DEMATTEIS, Commissioner,                :
Delaware Department of Corrections,            :
KOLAWOLE AKINBAYO, Warden,                     :
and ATTORNEY GENERAL OF THE                    :
THE STATE OF DELAWARE,                         :
                                               :
      Respondents.                         :

DEMETRESS MOSS, :
 :
   Petitioner, :
 :
  v. :  Civil Action No. 17-895-LPS
 :
CLAIRE DEMATTEIS, Commissioner, :
Delaware Department of Corrections, :
ROBERT MAY, Warden, and :
ATTORNEY  GENERAL OF THE :
STATE OF DELAWARE, :
 :
   Respondents. :

DEAN PRITCHETT, :
 :
   Petitioner, :
 :
  v. :  Civil Action No. 17-896-LPS
 :
CLAIRE DEMATTEIS, Commissioner, :
Delaware Department of Corrections, :
ROBERT MAY, Warden, and :
ATTORNEY  GENERAL OF THE :
STATE OF DELAWARE, :
 :
   Respondents.[3] :

EDWARD NOBLES, :
 :
   Petitioner, :
 :
  v. :  Civil Action No. 17-897-LPS
 :
CLAIRE DEMATTEIS, Commissioner, :
Delaware Department of Corrections, :
MARVIN MAILEY, Chief of Community :
Corrs., and ATTORNEY GENERAL OF :
THE STATE OF DELAWARE, :
 :
   Respondents.[4] :

---

[3] Warden Robert May  has replaced former Warden Dana Metzger, an original party to the case. *See* Fed. R. Civ. P. 25(d).

[4] Chief Marvin Mailey has replaced former Chief Jim Elder, an original party to the case. *See* Fed. R. Civ. P. 25(d).

JONATAN RODRIGUEZ,                       :
                                         :
    Petitioner,                          :
                                         :
    v.                                   :     Civil Action No. 17-975-LPS
                                         :
CLAIRE DEMATTEIS, Commissioner,          :
Delaware Department of Corrections,      :
ROBERT MAY, Warden, and                  :
ATTORNEY GENERAL OF THE                  :
STATE OF DELAWARE,                       :
                                         :
    Respondents.                         :

---

LYMOND MOSES,                            :
                                         :
    Petitioner,                          :
                                         :
    v.                                   :     Civil Action No. 17-1139-LPS
                                         :
CLAIRE DEMATTEIS, Commissioner,          :
Delaware Department of Corrections,      :
KOLAWOLE AKINBAYO, Warden,               :
and ATTORNEY GENERAL OF THE              :
STATE OF DELAWARE,                       :
                                         :
    Respondents.                         :

---

THOMAS WATERS,                           :
                                         :
    Petitioner,                          :
                                         :
    v.                                   :     Civil Action No. 17-1196-LPS
                                         :
CLAIRE DEMATTEIS, Commissioner,          :
Delaware Department of Corrections,      :
KOLAWOLE AKINBAYO, Warden,               :
and ATTORNEY GENERAL OF THE              :
THE STATE OF DELAWARE,                   :
                                         :
    Respondents.                         :

## MEMORANDUM OPINION

J. Brendan O'Neill and Nicole Marie Walker, Office of Defense Services for the State of Delaware, Wilmington, Delaware.

> Counsel for Petitioners Janard Brown, John Chavous, Sayyid Perez, DeShawn Chase, Phil Jones, Demetress Moss, Dean Pritchett, Edward Nobles, Jonatan Rodriguez, Lymond Moses, Thomas Waters.

Brian Arban, Matthew C. Bloom, Kathryn Joy Garrison, and Carolyn Shelley Hake, Deputy Attorney Generals, Delaware Department of Justice, Wilmington, Delaware.

> Counsel for Respondents.

November 30, 2020
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are eleven separate but nearly-identical § 2254 Petitions.  One Petition is filed by each of the following: Janard Brown (Civ. A. No. 17-727-LPS); John Chavous (Civ. A. No. 17-831-LPS); Sayyid Perez (Civ. A. No. 17-832-LPS); DeShawn Chase (Civ. A. No. 17-833-LPS); Phil Jones (Civ. A. No. 17-835-LPS); Demetriss Moss (Civ. A. No. 17-895-LPS); Dean Pritchett (Civ. A. No. 17-896-LPS); Edward Nobles (Civ. A. No. 17-897-LPS); Jonatan Rodriguez (Civ. A. No. 17-975-LPS); Lymond Moses (Civ. A. No. 17-1139-LPS); and Thomas Waters (Civ. A. No. 17-1196-LPS).

All eleven Petitioners were convicted of drug-related offenses between 2012 and 2014. Petitioner Brown's conviction was the result of a jury trial, while the convictions of the remaining ten Petitioners (Chavous, Perez, Chase, Jones, Moss, Pritchett, Nobles, Rodriguez, Moses, Waters) were the result of guilty pleas.

Starting in the spring of 2014, Delaware's Office of Defense Services ("ODS") filed Rule 61 motions[5] in the Superior Court on behalf of the instant Petitioners, asserting on behalf of each of them an identical claim for relief that misconduct arising from issues relating to an evidence scandal in the Office of the Chief Medical Examiner ("OCME") constituted impeachment material under *Brady v. Maryland*, 373 U.S. 83 (1963).  The ten Petitioners who entered guilty pleas (Chavous, Perez, Chase, Jones, Moss, Pritchett, Nobles, Rodriguez, Moses, Waters) also argued that their guilty pleas were rendered involuntary, pursuant to *Brady*, because the State failed to disclose evidence of OCME misconduct prior to the entry of their guilty pleas.  The ODS, which had filed Rule 61 motions on behalf of numerous other defendants convicted of drug-related charges, chose Brown's and seven

---

[5] A Rule 61 motion is a motion for post-conviction relief filed pursuant to Delaware Superior Court Criminal Rule 61.

others' Rule 61 motions for the Superior Court to decide ("Rule 61/OCME Test Case"). *See State v. Miller*, 2017 WL 1969780, at *1 (Del. Super. Ct. May 11, 2017). Since the Rule 61 motions filed by the ODS in more than 700 other cases were identical to those in the Rule 61/OCME Test Case, the parties agreed that the Superior Court's decision in the Rule 61/OCME Test Case would resolve many of the remaining Rule 61 motions then pending before the Superior Court (including the Rule 61 motions for the other ten Petitioners here: Chavous, Perez, Chase, Jones, Moss, Pritchett, Nobles, Rodriguez, Moses, Waters). *Id.* The Superior Court denied the Rule 61 motions in the Rule 61/OCME Test Case on May 11, 2017, and thereafter denied the Rule 61 motions in the other cases.

None of the instant eleven Petitioners appealed the denial of their Rule 61 motions. Instead, they filed the § 2254 Petitions presently pending before the Court.

Each Petition raises the same argument that the OCME misconduct constituted powerful impeachment material under *Brady v. Maryland.* (Brown, Civ. A. No. 17-727-LPS D.I. 3; Chavous, Civ. A. No. 17-831-LPS D.I. 2; Perez, Civ. A. No. 17-832-LPS D.I. 2; Chase, Civ. A. No. 17-833-LPS D.I. 2; Jones, Civ. A. No. 17-835-LPS D.I. 2; Moss, Civ. A. No. 17-895-LPS D.I. 2; Pritchett, Civ. A. No. 17-896-LPS D.I. 2; Nobles, Civ. A. No. 17-897-LPS D.I. 2; Rodriguez, Civ. A. No. 17-975-LPS D.I. 2; Moses, Civ. A. No. 17-1139-LPS D.I. 2; Waters, Civ. A. No. 17-1196-LPS D.I. 2) The ten Petitioners who pled guilty (Chavous, Perez, Chase, Jones, Moss, Pritchett, Nobles, Rodriguez, Moses, Waters) also contend that their guilty pleas were involuntary under *Brady* because the State failed to disclose evidence of the OCME misconduct prior to Petitioners entering a guilty plea.

Soon after filing the instant Petitions, the parties in each case filed a joint motion to stay briefing until after the Court resolved *Boyer v. Akinbayo*, Civ. A. No. 17-834-LPS, a case presenting

the same procedural issue (i.e., whether a petitioner's failure to appeal the Superior Court's denial of his Rule 61 motion precluded habeas relief due to his purposeful failure to exhaust state remedies). On November 6, 2018, the Court dismissed Boyer's habeas petition as procedurally barred and declined to issue a certificate of appealability. *See Boyer v. Akinbayo*, 2018 WL 5801545 (D. Del. Nov. 6, 2018). Boyer filed a notice of appeal with the Third Circuit Court of Appeals. On April 11, 2019, the Third Circuit denied Boyer's request for a certificate of appealability because "[j]urists of reason could not debate that the District Court properly denied Appellant's 28 U.S.C. § 2254 habeas petition." (*See* Boyer, Civ. A. No. 17-834-LPS D.I. 23)

Following the decision in *Boyer*, the Court lifted the stay in each of the instant eleven proceedings. Thereafter, the State filed an Answer in opposition to each Petition. In all of the eleven Answers, the State contends that the Court is procedurally barred from reviewing the sole claim for relief because the Petitioners did not exhaust state remedies for that claim. (Brown, Civ. A. No. 17-727-LPS D.I. 17 at 6-17; Chavous, Civ. A. No. 17-831-LPS D.I. 12 at 11-22; Perez, Civ. A. No. 17-832-LPS D.I. 13 at 14-22; Chase, Civ. A. No. 17-833-LPS D.I. 12 at 13-22; Jones, Civ. A. No. 17-835-LPS D.I. 15 at 5-13; Moss, Civ. A. No. 17-895-LPS D.I. 16 at 11-20; Pritchett, Civ. A. No. 17-896-LPS D.I. 16 at 7-15; Nobles, Civ. A. No. 17-897-LPS D.I. 16 at 4-13; Rodriguez, Civ. A. No. 17-975-LPS D.I. 13 at 14-23; Moses, Civ. A. No. 17-1139-LPS D.I. 13 at 14-22; Waters, Civ. A. No. 17-1196-LPS D.I. 14 at 5-13) The State also contends that six of the eleven Petitions are time-barred. (Chavous, Civ. A. No. 17-831-LPS D.I. 12 at 5-11; Perez, Civ. A. No. 17-832-LPS D.I. 13 at 6-14; Chase, Civ. A. No. 17-833-LPS D.I. 12 at 6-13; Moss, Civ. A. No. 17-895-LPS D.I. 16 at 4-11; Rodriguez, Civ. A. No. 17-975-LPS D.I. 13 at 8-14; Moses, Civ. A. No. 17-1139-LPS D.I. 13 at 7-14)

The Court has considered each Petition, Answer, and all other materials submitted in each of

the instant eleven cases. Since the briefing in the eleven cases is nearly and materially identical with respect to the substantive and procedural legal issues, and particularly with respect to the exhaustion/procedural bar issue, the Court finds that judicial economy is served by undertaking review and disposition of them together. Therefore, the Court *sua sponte* consolidates these cases for decision by a single Memorandum Opinion and Order to be filed in each case. *See* Fed. R. Civ. P. 42(a); *In re TMI Litigation*, 193 F.3d 613, 724 (3d Cir. 1999) ("The purpose of consolidation is to streamline and economize pretrial proceedings so as to avoid duplication of effort, and to prevent conflicting outcomes in cases involving similar legal and factual issues."); *Ellerman Lines, Ltd. v. Atlantic & Gull Stevedores, Inc.*, 339 F.2d 673, 675 (3d Cir. 1964) (noting that court may consolidate cases *sua sponte* or on motion of party).[6]

For the reasons that follow, the Court will dismiss all the Petitions and deny the relief requested.[7]

## I.     BACKGROUND

### A.     OCME CRIMINAL INVESTIGATION

The relevant information regarding the OCME evidence mishandling is set forth below:

> In February 2014, the Delaware State Police ("DSP") and the Department of Justice ("DOJ") began an investigation into criminal misconduct occurring in the Controlled Substances Unit of the OCME.
>
> The investigation revealed that some drug evidence sent to the OCME for testing had been stolen by OCME employees in some cases and was unaccounted for in other cases. Oversight of the lab had been lacking, and security procedures had not been followed. One

---

[6] Since the exhaustion/procedural bar issue is identical and dispositive in each of the cases, the Court will not address the statute of limitations argument raised by the State in six of the Petitions.

[7] For simplicity, the Court's citations in the remainder of this Opinion are to the docket for Petitioner Chavous, Civ. A. No. 17-831-LPS, unless otherwise noted.

employee was accused of "dry labbing" (or declaring a test result without actually conducting a test of the evidence) in several cases. Although the investigation remains ongoing, to date, three OCME employees have been suspended (two of those employees have been criminally indicted), and the Chief Medical Examiner has been fired.

There is no evidence to suggest that OCME employees tampered with drug evidence by adding known controlled substances to the evidence they received for testing in order to achieve positive results and secure convictions. That is, there is no evidence that the OCME staff "planted" evidence to wrongly obtain convictions. Rather, the employees who stole the evidence did so because it in fact consisted of illegal narcotics that they could resell or take for personal use.

*Brown v. State*, 108 A.3d 1201, 1204-05 (Del. 2015).

## B.   PROCEDURAL BACKGROUND FOR EACH PETITIONER

### 1. Janard Brown

On August 2, 2013, a Superior Court jury found Brown guilty of drug dealing and driving after judgment prohibited. *See Miller*, 2017 WL 1969780, at *4; Civ. A. No. 17-727-LPS D.I. 3 at 4) On October 11, 2013, the Superior Court sentenced Brown as follows: (1) for the drug dealing conviction, to fifteen years at Level V incarceration, suspended after eight years for thirty months of decreasing levels of supervision; and (2) for the driving after judgment prohibited conviction, to one year at Level V incarceration. (Civ. A. No. 17-727-LPS D.I. 3 at 4; *id.* D.I. 3-2) The Delaware Supreme Court affirmed Brown's conviction and sentence on October 9, 2014. *See Brown v. State*, 2014 WL 5099648, at *2 (Del. Oct. 9, 2014)

On January 30, 2015, Brown filed a *pro se* Rule 61 motion. (Civ. A. No. 17-727-LPS D.I. 3-1 at 9) On August 20, 2015, the ODS filed a substitute Rule 61 motion on Brown's behalf based on the misconduct at the OCME. (*Id.* D.I. 18-11) The Superior Court denied Brown's Rule 61 motion on May 11, 2017. *See Miller*, 2017 WL 1969780, at *14-15. Brown did not appeal that decision.

On June 12, 2017, the ODS filed in this Court a § 2254 Petition on Brown's behalf, asserting

5

that the OCME misconduct constituted powerful impeachment material under *Brady v. Maryland*. (Civ. A. No. 17-727-LPS D.I. 3 at 10-14)  Brown contends that the suppression of the OCME misconduct evidence affected the outcome of his trial, and specifically asserts that "evidence of the OCME misconduct may very well have prevented suspected drug evidence from coming in at trial." (*Id.* at 14)  The State filed an Answer asserting that Brown's Petition should be dismissed as procedurally barred because Brown, like Boyer, did not present his claim to the Delaware Supreme Court on direct or post-conviction appeal.  (*Id.* D.I. 17 at 6-17)

### 2. John Chavous

On April 12, 2012, Chavous pled guilty to possession of a firearm by a person prohibited ("PFBPP"), drug dealing, and possession of ammunition by a person prohibited ("PABPP").  (Civ. A. No. 17-831-LPS D.I. 2 at 4)  On June 22, 2012, the Superior Court sentenced Chavous as a habitual offender as follows: (1) for the PFBPP conviction, to eight years at Level V incarceration; and (2) for the drug dealing conviction, to five years at Level V incarceration, suspended for two years at Level IV, suspended after six months for eighteen months of Level III probation; and (3) for the PABPP conviction, to one year at Level V incarceration, suspended for one year of Level III probation.  (D.I. 2-2)  Chavous did not appeal his sentences or convictions.

On May 29, 2015, the ODS filed a Rule 61 motion for post-conviction relief on Chavous' behalf based on the OCME misconduct.  (D.I. 13-7)  The Superior Court denied Chavous' Rule 61 motion on May 26, 2017.  (D.I. 2-4)  Chavous did not appeal that decision.

On June 27, 2017, the ODS filed in this Court a § 2254 Petition on Chavous' behalf, asserting that the OCME misconduct constituted impeachment material under *Brady v. Maryland* and Chavous might not have pled guilty if he had known that he might be able to cast doubt on the chemical composition of the drugs.  (D.I. 12 at 18-19)  Chavous contends that his lack of knowledge

of the OCME evidence scandal was material to his decision to plead guilty and, therefore, his guilty plea was involuntary pursuant to *Brady v. United States*. (*Id.* at 10-19)  The State filed an Answer asserting that Chavous' Petition should be dismissed as procedurally barred because Chavous, like Boyer, did not present his claim to the Delaware Supreme Court on direct or post-conviction appeal. (D.I. 12 at 11-22)  The State alternatively asserts that the Petition should be dismissed as time-barred.  (*Id.* at 5-11)

### 3. Sayyid Perez

On March 13, 2013, Perez pled guilty to drug dealing.  (Civ. A. No. 17-832-LPS D.I. 2-1 at 2; *id.* D.I. 13 at 1)  That same day, the Superior Court sentenced him to ten years at Level V incarceration, suspended after six months for nine years and six months of Level IV work release or home confinement, suspended after six months for eighteen months at Level III supervision.  (*Id.* D.I. 2-2)

On April 27, 2015, the ODS filed a Rule 61 motion on Perez's behalf based on the misconduct at the OCME.  (*Id.* D.I. 14-5)  Perez filed a *pro se* motion for modification of sentence on March 1, 2017, which the Superior Court denied on June 15, 2017.  Perez did not appeal the denial of his sentence modification motion.  (*Id.* D.I. 2-1 at 6-7; *id.* D.I. 14-22; *id.* D.I. 16-12)

On February 9, 2017, while serving the probationary portion of his sentence, the Superior Court found Perez in violation of his probation ("VOP") for the fifth time.[8]  (*Id.* D.I. 16-11)  That same day, the Superior Court sentenced Perez to seven years at Level V,  suspended after three years for twelve months at Level IV DOC discretion, suspended after six months for twelve months at Level III supervision.  (*Id.* D.I. 16-11)  Perez did not appeal that decision.

---

[8]Perez was found to have violated his probation in January 2015, May 2015, October 2015, and August 2016.  (Civ. A. No. 17-832-LPS D.I. 14-1)

On June 21, 2017, the Superior Court denied Perez's Rule 61 motion. (*Id.* D.I. 2-4) Perez did not appeal that decision.

On June 27, 2017, the ODS filed in this Court a § 2254 Petition on Perez's behalf, asserting the same claim as already described above with respect to Chavous' Petition. (*Id.* D.I. 2) The State filed an Answer asserting the same failure to exhaust/procedurally barred argument it made in connection with Chavous' Petition. (*Id.* D.I. 13 at 14-22) The State alternatively asserts that the Petition should be dismissed as time-barred. (*Id.* at 6-14)

### 4. DeShawn Chase

On July 25, 2012, Chase pled guilty to possession of a controlled substance in a Tier 3 quantity. (Civ. A. No. 17-833 D.I. 12 at 1) On November 2, 2012, the Superior Court sentenced Chase to five years at Level V incarceration, suspended after two years for three years at Level IV Plummer Center, suspended, in turn, after six months for eighteen months of Level III probation. (*Id.* D.I. 2-2) Chase did not appeal his conviction or sentence.

On April 30, 2014, the ODS filed a Rule 61 motion on Chase's behalf based on the misconduct at the OCME. (*Id.* D.I. 13-4) The Superior Court denied the Rule 61 motion on May 26, 2017. (*Id.* D.I. 2-4) Chase did not appeal that decision.

On January 21, 2016, Chase filed a *pro se* motion for modification of sentence to remove the condition that he serve six months at the Plummer Center. (*Id.* D.I. 12 at 2) On May 26, 2016, the Superior Court granted the motion and entered a modified sentence order, which removed the condition that Chase serve six months at the Plummer Center, but increased the length of his probation. (*Id.* D.I. 13-19)

Petitioner completed the incarceration portion of his sentence on May 26, 2016 and began serving the probationary portion. (*Id.* D.I.12 at 2; *id.* D.I. 13-23) On August 11, 2017, the Superior

Court found Chase in violation of his probation ("VOP") due to his arrest and subsequent conviction on new, unrelated drug and gun charges. (*Id.* D.I 12 at 2-3)  That same day, the Superior Court discharged him as unimproved, but then sentenced him for the new drug and gun conviction to an aggregate 75 years at Level V incarceration, suspended after fifty years and nine months for decreasing levels of supervision.  (*Id.* D.I. 12 at 3)

On June 27, 2017, the ODS filed in this Court a § 2254 Petition on Chase's behalf, asserting the same claim as already described above with respect to Chavous' Petition. (*Id.* D.I. 2)  The State filed an Answer asserting the same failure to exhaust/procedurally barred argument it made in connection with Chavous' Petition. (*Id.* D.I. 12 at 13-22)  The State alternatively asserts that the Petition should be dismissed as time-barred and as moot. (*Id.* at 6-13, 22-23)

### 5. Phil Jones

On May 22, 2013, Jones pled guilty to Tier 2 drug possession with an aggravating factor. (Civ. A. No. 17-835-LPS D.I. 15 at 1)  The Superior Court immediately sentenced him to eight years of Level V incarceration, suspended after six months for eighteen months of Level III probation. (*Id.* D.I. 2-2)  Jones did not appeal his conviction or sentence.

On May 14, 2014, the ODS filed a Rule 61 motion on Jones' behalf based on the OCME misconduct. (*Id.* D.I. 16-3)  The Superior Court denied Jones' Rule 61 motion on June 21, 2017. (*Id.* D.I. 2-4)  Jones did not appeal that decision.[9]

On June 27, 2017, the ODS filed in this Court a § 2254 Petition on Jones' behalf, asserting the same claim as already described above with respect to Chavous' Petition. (*Id.* D.I. 2)  The State

---

[9]On October 1, 2014, the Superior Court found that Jones violated his probation ("VOP") and sentenced him to seven years and six months of Level V incarceration, suspended after eighteen months for eighteen months of probation.  (Civ. A. No. 17-835-LPS D.I. 18-2)

filed an Answer asserting the same failure to exhaust/procedurally barred argument it made in connection with Chavous' Petition.  (*Id.* D.I. 15 at 5-13)

### 6. Demetress Moss

On October 28, 2013, Moss pled guilty to drug dealing with an aggravating factor.  (Civ. A. No. 17-895-LPS D.I. 16 at 1; *id.* D.I. 17-3)  That same day, the Superior Court sentenced Moss to ten years at Level V incarceration, suspended after nine months for eighteen months of Level III probation.  (*Id.* D.I. 2-2)  Moss did not file a direct appeal.

On December 23, 2014, the ODS filed a Rule 61 motion on Moss' behalf.  (*Id.* D.I. 17-5)  The Superior Court denied the motion on June 21, 2017.  (*Id.* D.I. 2-4)  Moss did not appeal that decision.

On July 6, 2017, the ODS filed in this Court a § 2254 Petition on Moss' behalf, asserting the same claim as already described above with respect to Chavous' Petition.  (*Id.* D.I. 2)  The State filed an Answer asserting the same failure to exhaust/procedurally barred argument it made in connection with Chavous' Petition.  (*Id.* D.I. 16 at 11-20)  The State alternatively asserts that the Petition should be dismissed as time barred.  (*Id.* at 4-11)

### 7. Dean Pritchett

On March 26, 2014, Pritchett pled guilty to Tier 3 possession of heroin with an aggravating factor.  (Civ. A. No. 17-896-LPS D.I. 16 at 1)  On June 13, 2014, the Superior Court sentenced him to twenty-five years at Level V incarceration, suspended after ten years for ten years at Level IV work release, suspended, in turn, after one year for eighteen months of Level III probation.  (*Id.* D.I. 2-2)  Pritchett did not appeal his conviction or sentence.

On August 12, 2014, Pritchett filed a *pro se* motion for sentence reduction, which the Superior Court denied on August 22, 2014.  (*Id.* D.I. 16 at 2)  Pritchett did not appeal that decision.

10

On May 29, 2015, the ODS filed a Rule 61 motion on Pritchett's behalf based on the OCME misconduct. (*Id.*; *see also id.* D.I. 17-3) Thereafter, Pritchett filed two more motions for sentence reduction – on October 4, 2016 and October 27, 2016. (*Id.* D.I. 16 at 2) On December 28, 2016, the Superior Court partially granted Pritchett's motions, suspending eighteen months of his unsuspended Level V time and denying the remainder of his motion. (*Id.* at 3)

On June 21, 2017, the Superior Court denied Pritchett's Rule 61 motion. (*Id.* D.I. 2-4) Pritchett did not appeal that decision.

On July 6, 2017, the ODS filed in this Court a § 2254 Petition on Pritchett's behalf, asserting the same claim as already described above with respect to Chavous' Petition. (*Id.* D.I. 2) The State filed an Answer asserting the same failure to exhaust/procedurally barred argument it made in connection with Chavous' Petition. (*Id.* D.I. 16 at 7-15)

### 8. Edward Nobles

On April 24, 2103, Nobles pled guilty to drug dealing. (Civ. A. No. 17-897 D.I. 16 at 1) On June 28, 2013, the Superior Court sentenced him as a habitual offender to four years at Level V incarceration. (*Id.* D.I. 2-2) Nobles did not appeal his conviction or sentence.

On May 13, 2014, the ODS filed a Rule 61 motion on Noble's behalf, based on the OCME misconduct. (*Id.* D.I. 17-3) On June 22, 2017, the Superior Court denied Nobles' Rule 61 motion. (*Id.* D.I. 2-4)

On July 6, 2017, the ODS filed in this Court a § 2254 Petition on Noble's behalf, asserting the same claim as already described above with respect to Chavous' Petition. (*Id.* D.I. 2) The State filed an Answer asserting the same failure to exhaust/procedurally barred argument it made in connection with Chavous' Petition. (*Id.* D.I. 16 at 4-13)

### 9. Jonatan Rodriguez

On April 9, 2012, Rodriguez pled guilty to possession of a firearm by a person prohibited ("PFBPP") and drug dealing marijuana. (Civ. A. No. 17-975-LPS D.I 13 at 1; *id.* D.I. 14-3)  On June 22, 2012, the Superior Court sentenced Rodriguez as follows: (1) for the PFBPP conviction, to three years at Level V incarceration, suspended for twelve months of Level III probation; and (2) for the drug dealing conviction, to five years at Level V incarceration, suspended after two years for three years at a Level IV halfway house, suspended, in turn, after six months for eighteen months of Level III probation. (*Id.* D.I. 2-2)  Rodriguez did not appeal his convictions or sentence.

On March 27, 2015, the ODS filed a Rule 61 motion on Rodriguez's behalf, based on the OCME misconduct. (*Id.* D.I. 14-4)  On July 7, 2017, the Superior Court denied Rodriguez's Rule 61 motion. (*Id.* D.I. 2-4)

On July 18, 2017, the ODS filed in this Court a § 2254 Petition on Rodriguez's behalf, asserting the same claim as already described above with respect to Chavous' Petition. (*Id.* D.I. 2)  The State filed an Answer asserting the same failure to exhaust/procedurally barred argument it made in connection with Chavous' Petition. (*Id.* D.I. 13 at 14-23)  The State alternatively asserts that the Petition should be dismissed as time-barred. (*Id.* at 8-14)

### 10. Lymond Moses

On June 26, 2012, Moses pled guilty to Tier 1 possession with an aggravating factor. (Civ. No. 17-1139-LPS D.I. 13 at 1)  That same day, the Superior Court sentenced Moses to three years at Level V incarceration, suspended for eighteen months of Level III probation. (*Id.* D.I 2-2)  Moses did not appeal his conviction or sentence.

On May 9, 2014, the ODS filed a Rule 61 motion on Moses' behalf, based on the OCME misconduct. (*Id.* D.I. 14-4)  On June 21, 2017, the Superior Court denied Moses' Rule 61 motion.

12

(*Id.* D.I. 2-4)

On August 15, 2017, the ODS filed in this Court a § 2254 Petition on Moses' behalf, asserting the same claim as already described above with respect to Chavous' Petition. (*Id.* D.I. 2) The State filed an Answer asserting the same failure to exhaust/procedurally barred argument it made in connection with Chavous' Petition. (*Id.* D.I. 13 at 14-22) The State alternatively asserts that the Petition should be dismissed as time-barred and for being moot. (*Id.* at 7-14 and 22-26)

### 11. Thomas Waters

On November 27, 2013, Waters pled guilty to drug dealing. (Civ. A. No. 17-1196-LPS D.I. 15-3) That same day, the Superior Court sentenced him to eight years of Level V incarceration, suspended after two years for decreasing levels of supervision. (*Id.* D.I. 2-2) Waters did not appeal his conviction or sentence.

On April 30, 2014, the ODS filed a Rule 61 motion on Waters' behalf, based on the OCME misconduct. (*Id.* D.I. 15-4) On August 25, 2017, the Superior Court denied Waters' Rule 61 motion. (*Id.* D.I. 2-4)

On August 24, 2017, the ODS filed in this Court a § 2254 Petition on Water's behalf, asserting the same claim as already described above with respect to Chavous' Petition. (*Id.* D.I. 2) The State filed an Answer asserting the same failure to exhaust/procedurally barred argument it made in connection with Chavous' Petition. (*Id.* D.I. 14 at 5-13)

## II.    GOVERNING LEGAL PRINCIPLES

### A. Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003).

13

Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

## B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see also Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by fairly presenting all claims to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell*, 543 U.S. at 451 n.3; *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner may be excused from exhausting state remedies when there is either an absence of an available State corrective process or the existence of circumstances, such as futility or inordinate delay, that render such processes ineffective. *See* 28 U.S.C. § 2254(b)(1)(B); *Duckworth v. Serrano*, 454 U.S. 1 (1981). Situations falling within the "ineffective corrective process" exception to the exhaustion requirement include those instances when "(1) the state corrective process is so deficient as to render any effort to obtain relief futile . . . ; (2) acts of state officials have, in effect,

14

made state remedies unavailable to the petitioner . . . ; or (3) 'inordinate delay' in state proceedings has rendered state remedies ineffective." *Kozak v. Pennsylvania*, 2012 WL 4895519, at *4 (M.D. Pa. Oct 15, 2012). When a failure to exhaust is excused due to an ineffective corrective process, the court may review a claim on its merits without engaging in the procedural default analysis. *See, e.g., Lee v. Strickman*, 357 F.3d 338, 344 (3d Cir. 2004); *Story v. Kindt*, 26 F.3d 402, 405-06 (3d Cir. 1994); *Woodruff v. Williams*, 2016 WL 6124270, at *1 (E.D. Pa. Oct. 19, 2016).

However, if a petitioner's failure to exhaust does not fall within the aforementioned "ineffective corrective process" exception, and state procedural rules bar the petitioner from seeking further relief in state courts, the claims, while technically exhausted, are procedurally defaulted. *See Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *Coleman v. Thompson*, 501 U.S. 722, 732 (1991) (noting that "habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him"). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is technically exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989). A federal court cannot consider the merits of procedurally defaulted claims unless the petitioner establishes cause and prejudice to excuse the default, or that a fundamental miscarriage of justice will result absent review of the claims. *See Lines*, 208 F.3d at 160.

## III.   DISCUSSION

### A.   Exhaustion

All eleven Petitioners acknowledge that they did not exhaust state remedies for their habeas claim, given their failure to appeal the denial of their Rule 61 motions to the Delaware Supreme Court. (D.I. 2 at 4) However, they present three arguments as to why the Court should excuse their

15

failure to exhaust on the basis of futility: (1) exhausting state remedies by appealing the Superior Court's Rule 61 decision would have been futile because of the Superior Court's inordinate delay in adjudicating each Petitioner's Rule 61 motion ("inordinate delay" excuse); (2) appealing the denial of their Rule 61 motions to the Delaware Supreme Court would have been futile because that court has rejected identical claims based upon the OCME misconduct in other cases for postconviction relief ("futility on the merits" excuse); and (3) appealing the denial of their Rule 61 motions to the Delaware Supreme Court would have been futile because Rule 61 does "not provide an adequate opportunity for [Petitioners] to obtain relief" ("futility due to deficiency of Rule 61 proceedings" excuse) (D.I. 2 at 4-7).  The State contends that Petitioners' failure to exhaust should not be excused for any of these futility reasons and, since state criminal procedural rules preclude Petitioners from returning to the state courts for further review, the claim is now technically exhausted but procedurally defaulted.  (D.I. 12 at 11-22)

The Court will discuss Petitioners' three futility arguments in turn.

### 1. Futility Due to Inordinate Delay During Rule 61 Proceeding

"[I]nexcusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively unavailable," thereby warranting excusing the exhaustion requirement.  *Story*, 26 F.3d at 405.  "The existence of an inordinate delay does not automatically excuse the exhaustion requirement, but it does shift the burden to the state to demonstrate why exhaustion should still be required."  *Lee*, 357 F.3d at 341.

Neither the United States Supreme Court nor the Third Circuit has defined a specific amount of time that constitutes inordinate delay in a petitioner's post-conviction proceedings.  As explained by the Third Circuit,

We stated in *Wojtczak v. Fulcomer*, 800 F.2d 353, 354 (3d Cir. 1986), that

16

"inexcusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively unavailable." In that case, thirty-three months had passed after the petitioner's PCRA filing without resolution. *Id.* This, we found, excused the petitioner's failure to exhaust his state court remedies. *Id.* at 356. The thirty-three month delay in *Wojtczak* remains the shortest delay held to render state collateral proceedings ineffective for purposes of the exhaustion requirement.

*Cristin v. Brennan,* 281 F.3d 404, 411 (3d Cir. 2002) (refusing to excuse exhaustion despite twenty-seven month delay); *see also Lee,* 357 F.3d at 343-44 (excusing exhaustion after eight year delay); *Coss v. Lackawanna County Dist. Att'y,* 204 F.3d 453, 460 (3d Cir. 2000) (*en banc*) (excusing exhaustion after seven year delay), *rev'd on other grounds,* 532 U.S. 394 (2001); *Story,* 26 F.3d 402, 406 (3d Cir. 1994) (excusing exhaustion after nine year delay).

In the context of delay-based excuses, courts in the Third Circuit have excused a petitioner's failure to exhaust state remedies when the following three factors are present: (1) the delays in the state court proceedings have amounted to three, five, eleven, or twelve years;[10] (2) no meaningful action towards resolution has been taken in the state court; and (3) the delay was not attributable to the petitioner. *See Simmons v. Garman,* 2017 WL 2222526, at *3 (E.D. Pa. Feb. 14, 2017).

Federal courts consider the degree of progress made by the state courts when determining whether a delay is inordinate. *See Lee,* 357 F.3d at 342. In cases where courts have excused exhaustion due to an inordinate delay, the delay in petitioners' state post-conviction proceedings was still ongoing at the time of federal habeas review. *See Wojtczak,* 800 F.2d at 354 (unresolved after thirty-three months); *cf. Cristin,* 281 F.3d at 411 (concluding that thirty-three month delay did not excuse exhaustion under inordinate delay exception as state court ruled on Cristin's state post-

---

[10] *See Story,* 26 F.3d at 405-06 (citing cases).

17

conviction petition one week after he filed his federal habeas petition); *Wallace v. Dragovich*, 143 F. App'x 413, 418 (3d Cir. 2005) (finding that petitioner's failure to exhaust was not excusable on basis of inordinate delay, where previously-stalled state habeas proceeding had resumed). The Court has not identified any cases holding that a petitioner's failure to exhaust can be excused on the basis of a delay in a state post-conviction proceeding when that delay has already ended. *See, e.g., Vreeland v. Davis*, 543 F. App'x 739, 741-42 (10th Cir. 2013).

Here, none of the eleven Petitioners appealed the denial of his Rule 61 motion. In fact, each admits he purposefully decided to forgo post-conviction appeals in order to proceed immediately with a federal habeas petition. (D.I. 2 at 4) Petitioners assert that the average three-year span between the filing of their Rule 61 motions and the Superior Court's adjudication of those motions constitutes inordinate delay and the possibility of continued delay in the Delaware Supreme Court "unnecessarily risk[ed] mooting [Petitioners'] federal claims before [they] [would be] able to reach Federal Court." (D.I. 2 at 6)

The Court rejected an almost identical argument in *Boyer*, because Boyer's post-conviction proceeding was not in a state of suspended animation when he filed his habeas Petition. *See* 2018 WL 5801545, at *4-5. The Court also noted that Boyer's mistrust of the Delaware Supreme Court's ability to decide his post-conviction appeal within a certain time-frame was insufficient to excuse him from exhausting state court remedies for his claim. *See id.*

Like Boyer, Petitioners did not file their Petitions while their Rule 61 motions were in a state of suspended animation. As a result, Petitioners, like Boyer, cannot rely on allegations of inordinate delay to excuse their failure to exhaust.

### 2. Futility on the Merits

Petitioners also ask the Court to excuse their failure to exhaust on the ground that it would

18

have been futile to present their claim to the Delaware Supreme Court, because that court has already considered and rejected numerous identical or similar OCME misconduct claims. (D.I. 2 at 4-6) But futility on the merits does not constitute cause for a procedurally defaulted claim. *See Engle v. Isaac*, 456 U.S. 107, 130 (1982) (stating petitioner "may not bypass the state courts simply because he thinks they will be unsympathetic to the claim"). The Third Circuit has applied *Engle*'s reasoning in the context of exhaustion, opining that "likely futility on the merits . . . in state court of a petitioner's habeas claim does not render that claim exhausted within the meaning of § 2254(b)(1)(A) so as to excuse the petitioner's failure to exhaust that claim by presenting it in state court before asserting in a federal habeas petition." *Parker v. Kelchner*, 429 F.3d 58, 64 (3d Cir. 2005). More specifically, "[a]llowing petitioners to bypass state court merely because they believe that their constitutional claims would have failed there on the merits would fly in the face of comity and would deprive state courts of a critical opportunity to examine and refine their constitutional jurisprudence." *Id.*

Both the procedural history of Petitioners' Rule 61 proceedings and the instant "futility on the merits" argument are substantially similar to what the Court encountered in *Boyer*, 2018 WL 5801545, at *4-5. There, applying the reasoning of *Engle* and *Parker*, the Court declined to excuse Boyer's failure to exhaust his claims on the basis of "likely futility on the merits." *Id.* at *5. The Third Circuit agreed; it declined to grant Boyer a certificate of appealability, explicitly stating, "We have rejected the argument that likely futility on the merits of a claim in state court excuses a habeas petitioner's failure to exhaust that claim." (*See Boyer*, Civ. A. No. 17-834-LPS D.I. 23) Given these circumstances, the Court concludes that Petitioners' failure to exhaust state remedies is not excused on the ground of likely futility on the merits.

### 3.  Deficient Rule 61 procedures

In their last attempt to justify their failure to exhaust state remedies, Petitioners contend that Rule 61's procedures are so deficient that the Rule would not have provided them with an opportunity to obtain relief, thereby demonstrating that it would have been futile to present their claim to the Delaware Supreme Court on post-conviction appeal.  (D.I. 2 at 6-7)  However, "[f]ederal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." *Dist. Attorney's Office for the Third Jud. Dist. v. Osborne*, 557 U.S. 52, 69 (2009).  In the context of purportedly deficient state postconviction procedures, federal courts may excuse the exhaustion requirement only when "it appears that the prisoner's rights have become an 'empty shell' or that the state process is a 'procedural morass' offering no hope of relief." *Hankins v. Fulcomer*, 941 F.2d 246, 250 (3d Cir. 1991).

Here, Petitioners do not substantiate their contention that Rule 61 is inadequate; nor do they cite any case finding that Rule 61 offers a deficient corrective process.  In fact, this Court has consistently found that Rule 61 is an independent and adequate state procedural ground that precludes federal habeas review. *See, e.g., Trice v. Pierce*, 2016 WL 2771123, at *4 (D. Del. May 13, 2016); *Maxion v. Snyder*, 2001 WL 848601, at *10 (D. Del. July 27, 2001).  Petitioners' conclusory allegations about the inadequacy of Rule 61 do not demonstrate that its procedures are an "empty shell" or a "procedural morass offering no hope for relief."

In sum, for the aforementioned reasons, the Court concludes that Petitioners' failure to exhaust state remedies does not fall within the narrow "futility" exception to the exhaustion doctrine.

### B.  Procedural Default

Having determined that Petitioners' intentional failure to appeal the denial of their Rule 61

20

motions is not excusable, Petitioners' habeas claim remains unexhausted. At this juncture, any

attempt by Petitioners to exhaust state remedies by presenting the claim in new Rule 61 motions

would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1) and as successive

under Rule 61(i)(2). *See* Del. Super. Ct. Crim R. 61(i)(1)(establishing one year deadline for filing Rule

61 motions); Del. Super. Ct. Crim. R. 61(i)(2) (barring second or successive Rule 61 motion unless

certain pleading requirements are satisfied). Consequently, the Court must treat the claim as

technically exhausted but procedurally defaulted, which means that the Court cannot review the

merits of the claim absent a showing of cause and prejudice, or that a miscarriage of justice will

result absent such review. *See Lines*, 208 F.3d at 160.

      To demonstrate cause for a procedural default, a petitioner must show that "some objective

factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."

*Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show

"that [the errors in state court] worked to his actual and substantial disadvantage, infecting his entire

trial with error of constitutional dimensions." *Id.* at 494.

      Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates

that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v.

Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). A petitioner

demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in

the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Actual innocence means

factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In

order to establish actual innocence, the petitioner must present new reliable evidence – not

presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have

found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see*

*also Sweger v. Chesney*, 294 F.3d 506, 522-24 (3d Cir. 2002).

To the extent Petitioners' three-pronged futility argument should also be viewed as an attempt to establish cause for their procedural default, the argument is unavailing. In order to establish cause, Petitioners must demonstrate that an external factor prevented them from appealing the denial of their Rule 61 motion. However, nothing prevented Petitioners from filing post-conviction appeals; they simply elected not to do so. Thus, Petitioners' belief that it would have been futile to present their claim to the Delaware Supreme does not constitute cause for their procedural default.

In the absence of cause, the Court does not need to address prejudice.

The Court further concludes that the miscarriage of justice exception does not excuse Petitioners' procedural default. Brown – the sole Petitioner who was convicted after a jury trial – contends that there is a reasonable probability that the result of his proceeding would have been different "had the evidence of the OCME misconduct been disclosed to the defense." (Civ. A. No. 17-727-LPS D.I. 3 at 14) The ten Petitioners who entered guilty pleas contend that there is a reasonable probability they would not have pled guilty had they known about the OCME misconduct, and also that they may have sought and received "a substantial reduction in the plea-bargained sentence as a condition of forgoing a trial." (D.I. 2 at 18-19) However, none of these assertions constitutes new reliable evidence of any Petitioner's actual innocence.

Accordingly, the Court will deny the instant Petitions as procedurally barred from federal habeas review.

## IV.    EVIDENTIARY HEARING

As an alternative request for relief, each Petitioner summarily asks the Court to "hold an evidentiary hearing and allow full briefing on his claim." (D.I. 2 at 19) It is unclear whether the

requests are for an evidentiary hearing on the underlying OCME misconduct/involuntary guilty plea

claim or on the procedural default of that claim.  In both respects, the Court will deny the request.

**A.     Evidentiary Hearing On OCME Misconduct/Involuntary Guilty Plea Claim**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") permits evidentiary

hearings on habeas review in a limited number of circumstances.[11]  *See Campbell v. Vaughn*, 209 F.3d

280, 286 (3d Cir. 2000).  For instance, 28 U.S.C. § 2254(e) provides:

> (1) In a proceeding instituted by an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State
> court, a determination of a factual issue made by a State court shall
> be presumed to be correct.  The applicant shall have the burden of
> rebutting the presumption of correctness by clear and convincing
> evidence.
>
> (2) If the applicant has failed to develop the factual basis of a claim in
> State court proceedings, the court shall not hold an evidentiary
> hearing on the claim unless the applicant shows that –
>
>> (A) the claim relies on –
>>
>>> (i) a new rule of constitutional law, made retroactive
>>> to cases on collateral review by the Supreme Court,
>>> that was previously unavailable; or
>>>
>>> (ii) a factual predicate that could not have been
>>> previously discovered through the exercise of due

---

[11] Prior to the enactment of AEDPA, "the decision to grant an evidentiary hearing was generally left to the sound discretion of district courts." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  However, evidentiary hearings were mandatory in six specific circumstances: (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there was a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appeared that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.  *See Townsend v. Sain*, 372 U.S. 293, 312 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992).  While AEDPA has not changed the "basic rule" of leaving the decision to grant an evidentiary to the discretion of the district courts, it has imposed certain limitations on the exercise of that discretion via § 2254(e)(2).  *See Cristin*, 281 F.3d at 413.

diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

The "initial inquiry" when determining whether to grant an evidentiary hearing is whether the petitioner has "failed to develop the factual basis" of the claim in state court. *See* 28 U.S.C. § 2254(e)(2); *see also Williams v. Taylor*, 529 U.S. 420, 433 (2000). "Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams*, 529 U.S. at 433. "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.* at 437. When determining if a petitioner has been diligent, "[t]he question is not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts." *Id.* at 435. In short, if the factual basis of the claim was not developed but the petitioner was diligent in pursuing the claim in state court, the opening phrase of § 2254(e)(2) does not bar an evidentiary hearing. *See Lark v. Sec'y Pennsylvania Dep't of Corr.*, 645 F.3d 596, 614 (3d Cir. 2011).

Nevertheless, even "a petitioner who diligently but unsuccessfully seeks an evidentiary hearing in state court still is not ***entitled*** to an evidentiary hearing in federal court under AEDPA. Rather, . . . whether to hold a hearing for a petitioner who is not at fault under § 2254(e)(2) remains in the discretion of the district court, and depends on whether the hearing would have the potential to advance the petitioner's claim." *Taylor v. Horn*, 504 F.3d 416, 444 (3d Cir. 2007); *see also Schriro*, 550 U.S. at 473 (explaining that "basic" pre-AEDPA rule leaving decision on whether to grant

24

evidentiary hearing to "sound discretion of district courts" has not changed under AEDPA).
"Where a petitioner fails to forecast to the district court evidence outside the record that would help
his cause or 'otherwise to explain how his claim would be advanced by an evidentiary hearing,' a
court is within its discretion to deny the claim." *Buda v. Stickman*, 149 F. App'x 86, 90 (3d Cir. 2005).

Here, evidentiary hearings were not held in any of the eleven Petitioners' Rule 61
proceedings. But Petitioners do not explain how the factual basis of their claim needs further
development as part of their federal habeas review.[12] In fact, one of the eleven Petitioners, Brown,
explicitly decided to forego a Rule 61 evidentiary hearing when he agreed with the Superior Court's
assessment that an evidentiary hearing was not warranted in his Rule 61 proceedings because the
issues were legal in nature.[13] (*See* Civ. A. No. 17-727-LPS D.I. 18-20 at 7, 9, 33, 36) With respect to
that case, the Superior Court explained: "factually the critical factor appears to be whether the
defendant pled guilty or proceeded to trial," and stated it was "willing to rule on th[e] outstanding
[Rule 61] Motions based upon the pleadings filed to date," subject to the parties' agreement. (*Id.* at
8) In turn, while it is not entirely clear, it appears that the remaining ten Petitioners (Chavous, Perez,
Chase, Jones, Moss, Pritchett, Nobles, Rodriguez, Moses, Waters) implicitly agreed to forego an
evidentiary hearing in their cases.[14] Given these circumstances, it seems that there was no failure to

---

[12] Notably, the Superior Court denied the eleven Rule 61 motions for substantially the same reason: each Petitioner either stipulated to the drug evidence (Brown) or knowingly and voluntarily admitted during his plea colloquy that he committed the drug crimes for which he was convicted (Chavous, Perez, Chase, Jones, Moss, Pritchett, Nobles, Rodriguez, Moses, Waters).

[13] The fact that Brown knowingly waived an evidentiary hearing in state court, and admitted that the issue he raised was legal in nature, suggests that he may not be seeking an evidentiary hearing on the substantive claim presented in this proceeding but, rather, is seeking an evidentiary hearing on the issue of procedural default. The Court addresses that premise further below.

[14] The fact that the Superior Court cited its decision denying Brown's Rule 61 motion (i.e. *Miller*, 2017 WL 1969780) when it denied the Rule 61 motions of the remaining ten Petitioners suggests

25

develop the factual basis of the claim at the state court level which, in turn, seems to eliminate the need for an evidentiary hearing here.  Nevertheless, the Court will continue with its analysis.

Although Brown explicitly agreed to forego an evidentiary hearing, it appears that he technically satisfied § 2254(e)(2)'s diligence requirement because, at a minimum, the Superior Court's letter indicates that he originally sought an evidentiary hearing in the manner prescribed by state law. The Court reaches the same conclusion with respect to the remaining ten Petitioners (who may or may not have implicitly agreed to forego an evidentiary hearing).  Since it appears that Petitioners exercised the type of diligence contemplated by § 2254(e)(2), § 2254(e) does not bar an evidentiary hearing,[15] which means that the Court retains discretion over the decision to conduct an evidentiary hearing.

In any event, Petitioners have not met their burden of showing that an evidentiary hearing would be meaningful in relation to the OCME misconduct/involuntarily guilty plea claim.  Their

---

that it did not hold evidentiary hearings in those ten cases for the same reason it did not hold one in Brown's case; namely, because the issue was legal in nature.  Additionally, in a letter filed in the cases of the ten Petitioners other than Brown (i.e., Chavous, Perez, Chase, Jones, Moss, Pritchett, Nobles, Rodriguez, Moses, Waters), the ODS asserted: "On March 21, 2017, [the Superior] Court stated that it 'will proceed to rule on the OCME motions currently pending in New Castle County based upon the submissions which have been made.'"  (*Chavous*, Civ. A. No. 17-831 D.I. 13-16 at 1)  Attached to that letter is a list of numerous individuals with pending Rule 61 motions premised on the OCME misconduct, including the names of the ten Petitioners discussed here – Chavous, Perez, Chase, Jones, Moss, Pritchett, Nobles, Rodriguez, Moses, Waters.  (*Id.* at 3-8)  Since, in that same letter, the ODS did not challenge the Superior Court's expressed intent to rule on the Rule 61 motions on the basis of the filings to date, it would appear that Petitioners Chavous, Perez, Chase, Jones, Moss, Pritchett, Nobles, Rodriguez, Moses, Waters also knowingly waived an evidentiary hearing.

[15] Alternatively, if the Court had instead concluded that Petitioners did not satisfy the diligence requirement of § 2254(e)(2), then the Court would only be permitted (but not required) to hold an evidentiary hearing if Petitioners demonstrated that their cases fell within the very limited circumstances set forth in § 2254(e)(2)(A) and (B).  Since Petitioners' single-sentence request for an evidentiary hearing does not come close to satisfying the requirements of § 2254(e)(2)(A) or (B), in this alternate scenario, § 2254(e)(2) would bar the Court from holding a hearing in all cases.

single-sentence request for a hearing does not forecast any evidence helpful to their cause that is not already in the record; nor does it explain how a new hearing would advance their claim. Indeed, none of the ten Petitioners filed replies to the State's argument that an evidentiary hearing is not warranted. Moreover, given the stipulation regarding the drug evidence during a jury trial (Brown) or the admission of guilt during a guilty plea colloquy (Chavous, Perez, Chase, Jones, Moss, Pritchett, Nobles, Rodriguez, Moses, Waters), and Petitioners' failure to assert their actual innocence, Petitioners have not alleged facts that, if true, would permit them to prevail on their OCME misconduct/involuntary guilty plea claim.

Accordingly, the Court concludes that an evidentiary hearing on the OCME misconduct/involuntary guilty plea claim is not warranted in any of the instant cases.

**B.      Evidentiary Hearing on Procedural Default**

The Third Circuit has held that § 2254(e)(2) does not bar an evidentiary hearing to determine if a petitioner can establish cause and prejudice to avoid a procedural default. *See Cristin*, 281 F.3d at 416-17 ("[T]he plain meaning of § 2254(e)(2)'s introductory language does not preclude federal hearings on excuses for procedural default at the state level."). Consequently, it is within the Court's discretion to hold an evidentiary hearing on Petitioners' excuses for their failure to appeal the denial of their Rule 61 motions.

As previously discussed, the Court has considered, and rejected, Petitioners' reasons for the procedural default. Petitioners do not indicate any other evidence/reason that may excuse their failure to appeal the denial of their Rule 61 motions. Therefore, the Court will not hold an evidentiary hearing on the issue of procedural default.

## V.  CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant eleven Petitions do not warrant relief.  Reasonable jurists would not find this conclusion to be debatable.  Accordingly, the Court will not issue a certificate of appealability in any of the instant cases.

## VI.  CONCLUSION

For the reasons discussed, the Court concludes that all eleven Petitions must be denied.  An appropriate Order will be entered.